1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CARLA HUGHES, | ) | 1:07cv1387 DLB |
| | ) | |
| | ) | |
| Plaintiff, | ) | ORDER REGARDING PLAINTIFF'S |
| | ) | SOCIAL SECURITY COMPLAINT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## BACKGROUND

Plaintiff Carla Hughes ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her application on March 2, 2004, alleging disability since August 5, 2003, due to back and leg pain, lupus and depression. AR 89-92, 146-155. After being denied initially

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On November 15, 2007, the Honorable Anthony W. Ishii reassigned the case to the undersigned for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1   and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge

2   ("ALJ").  AR 24-28, 31-36, 37.  On April 11, 2007, ALJ Larry B. Parker held a hearing.  AR

3   505-541.  ALJ Parker denied benefits on June 5, 2007.  AR 9-21.  The Appeals Council denied

4   review on August 3, 2007.  AR 4-6.

5       Hearing Testimony

6          ALJ Parker held a hearing on April 11, 2007, in Bakersfield, California.[3]  Plaintiff

7   appeared with her attorney, Geoffrey Hayden.  Vocational expert ("VE") John Kilcher appeared

8   and testified, as did Medical Experts Sidney Bolter, M.D., and John Morse, M.D.  AR 505.

9          Plaintiff testified that she was born in 1970 and received her GED.  AR 510.  She

10  previously worked as a nurse's aide and a student loan counselor, and was currently taking care

11  of her mother.  AR 510-511.

12         Plaintiff testified that she had surgery on her back, but it did not help the pain.  AR 513-

13  514.  She takes medications that make her dizzy and sleepy.  Plaintiff has to lie down every day,

14  for most of the day.  AR 514.  Plaintiff is also taking medication for gout, but she still sometimes

15  cannot walk without pain.  She thought she could walk about a block and a half before needing to

16  stop.  AR 515.  Plaintiff has lupus, too, which makes her joints "real sore."  She has also been

17  diagnosed with fibromyalgia.  AR 516.

18         Plaintiff takes medication for anxiety and has trouble with her hips and shoulders.  She

19  gets three to four migraine headaches a month and takes medication.  AR 517.  Plaintiff testified

20  that her worst pain is in her joints and rated it as a seven (with medications) on a scale of one to

21  ten.  AR 518.  Plaintiff takes a medication to help her sleep and has sleep apnea, for which she

22  uses a C-PAP machine.  AR 520.

23         Plaintiff thought that the heaviest thing she could lift and/or carry was a gallon of milk.

24  She could stand for about 20 minutes before needing to sit down and could sit for about 30

25  minutes.  AR 519.  She is able to do laundry, but her son helps her finish.  AR 520.  Her son and

26

27         [3] The ALJ held a prior hearing on May 25, 2006.  After the hearing, additional evidence was allowed into
28  the record and the ALJ requested the services of two medical experts and a vocational expert, and Plaintiff to a de
    novo hearing.  AR 507.

1   husband help her cook.  AR 521.  She sometimes has to wear slip on shoes because she is unable

2   to put on her shoes and socks.  She has arthritis in her hands and has trouble grabbing things.

3   She said she would have trouble picking pennies up off the table about eight to ten days a month.

4   AR 522.  Her hands get numb almost every day, for five to ten minutes at a time.  AR 522.

5   Plaintiff was currently receiving treatment for psychological problems.  AR 522.  Plaintiff

6   also has irritable bowel syndrome and testified that she would have to be close to the bathroom if

7   she worked.  AR 524.

8   Dr. Bolter testified that Plaintiff suffered from adjustment disorder with depressed mood

9   and would be restricted to simple, repetitive tasks.  AR 526-527.

10   Dr. Morse testified that none of Plaintiff's physical impairments met or equaled the

11   listings.  AR 532.  He believed that Plaintiff could perform light work, with occasional kneeling,

12   stooping, and bending.  She had to avoid scaffolds and ladders because of her obesity.  He did

13   not assess any push/pull limitations.  AR 534.  When questioned by Plaintiff's attorney, he

14   explained that he did not see any ongoing issues relating to trouble picking up small objects.  AR

15   534-535.

16   For the first hypothetical, the ALJ asked the VE to assume a person of Plaintiff's age,

17   education and past experience.  This person could lift and carry 20 pounds occasionally, 10

18   pounds frequently, sit, stand and walk for six hours each out of an eight hour day, and

19   occasionally kneel, stoop and bend.  This person could never climb ladders, ropes or scaffolds,

20   and would be limited to simple, repetitive tasks.  This person could not work in a public setting

21   and could have minimal contact with peers and supervisors.  The VE testified that this person

22   could not perform any of Plaintiff's past work, but could perform positions in material reporting

23   and laundry/dry-cleaning.  AR 539-540.

24   Plaintiff's attorney asked the VE if there would be positions available if this person could

25   not stay on task for one-third of the day.  The VE responded that there would be no jobs

26   available.  AR 540-541.

27

28

1      Medical Record[4]

2      Plaintiff was evaluated by Martin Berry, M.D., on April 7, 2003, for possible lupus and

3 rheumatoid arthritis.  Plaintiff reported that she was taking Plaquenil and that it helped her feel

4 better.  There was no synovitis in any of the small or large joints of the upper or lower

5 extremities.  Dr. Berry diagnosed Plaintiff with probable lupus with parotid inflammation and

6 associated Sjogren's syndrome.  AR 242-243.

7      In October 2003, Plaintiff had surgery to repair a herniated disc in her neck.  AR 229-230.

8      On December 11, 2003, Plaintiff saw Joel D. Mack, M.D., in follow-up after her back

9 surgery.  She indicated that she has had pain in her right shoulder since a childhood injury and

10 that it bothers her when it is cold.  On examination, she was tender anteriorly over the rotator

11 cuff, but had full range of motion with pain on abduction and forward flexion.  Dr. Mack

12 diagnosed subacromial bursitis.  Plaintiff indicated that since the pain waxes and wanes, she did

13 not want to do anything "about it at this point."  AR 283.

14      On January 15, 2004, Dr. Berry reported that there was some swelling in Plaintiff's hands

15 and range of motion in her hands and shoulders was fair.  AR 249.

16      On August 3, 2004, Dr. Berry again noted that Plaintiff had some swelling in her hands

17 and decreased range of motion in her hands and shoulders.  AR 250.

18      Plaintiff returned to Dr. Berry on August 18, 2004, and reported that she was hurting all

19 over.  At that time, she was going to school for four hours a day, four days a week, to become a

20 medical assistant.  She had swelling in her hands and decreased range of motion, as well as fair

21 range of motion in her shoulders.  AR 252.

22      On September 3, 2004, Plaintiff reported that her joints were feeling better.  Range of

23 motion in her hands was better but she still had some swelling.  Range of motion in her shoulders

24 was also better.  AR 256.

25      On September 15, 2004, State Agency physician Lavanya Bobba, M.D., completed a

26 Physical Residual Functional Capacity Assessment.  Dr. Bobba opined that Plaintiff could

27 

28      [4] Plaintiff's claim involves only the ALJ's treatment of her manipulative limitations and the medical record summary will therefore be limited to such evidence.

occasionally lift and/or carry 20 pounds, 10 pounds frequently, stand and/or walk for about six hours and sit for about six hours.  She was not limited in pushing or pulling.  Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl.  Dr. Bobba believed that Plaintiff was limited in reaching in all directions (including overhead), and in handling and fingering. Specifically, Plaintiff could not perform frequent overhead work or frequent twisting, grasping or gripping with either upper extremity due to complaints of pain in her hands and shoulders and swelling in her hands.  Plaintiff had to avoid concentrated exposure to hazards.  This opinion was affirmed on January 11, 2005.  AR 300-307.

_____Plaintiff returned to Dr. Berry on November 17, 2004.  She reported that she fell down at school in August and separated her right shoulder.  She had some swelling in her hands and range of motion was decreased.  Range of motion in her right shoulder was also decreased.  AR 257.

On December 6, 2004, Dr. Berry noted that Plaintiff had some swelling in her hands and range of motion was fair.  Range of motion in her right shoulder was decreased.  AR 258.

X-rays of Plaintiff's acromioclavicular joints taken on July 19, 2005, revealed arthritic changes in the right joint.  An old healed separation could not be ruled out.  X-rays of her right shoulder taken the same day showed osteoarthritic changes.  AR 449.

_____On January 12, 2006, Plaintiff saw Kenneth Hsu, M.D., for a rheumatic evaluation.  On examination, there was evidence of relative puffiness and swelling in the metacarpophalangeal ("MCP") and proximal interphalangeal ("PIP") joints.  There was also a history of multiple tender points.  Plaintiff's left third finger showed evidence of trigger finger.  Dr. Hsu diagnosed left third trigger finger, and a history of rheumatoid arthritis, lupus and fibromyalgia.  AR 330.

_____X-rays of Plaintiff's hands and wrists taken on March 20, 2006, were negative.  AR 326.

_____Plaintiff returned to Dr. Hsu on April 6, 2006, and complained that her entire body was in pain.  She had swelling in both MCP and PIP joints.  AR 328.

_____On May 3, 2006, Dr. Hsu indicated that Plaintiff's hands were swollen.  AR 327.

1        ALJ's Findings

2        The ALJ determined that Plaintiff had the severe impairments of an adjustment disorder

3  with depressed mood, systemic lupus erythematosus ("SLE"), gouty arthritis, sleep apnea using a

4  C-PAP machine, back pain secondary to status post laminectomy in October 2003, and a history

5  of gastroesophageal reflux disease ("GERD"). AR 14. Despite these impairments, the ALJ

6  determined that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry

7  twenty pounds occasionally and ten pounds frequently, stand and/or walk for six out of eight

8  hours and sit for six hours. She could perform the full range of light work with avoidance of

9  ladders, ropes and scaffolds. Mentally, Plaintiff was limited to simple, repetitive tasks in a non-

10  public setting and with limited contact with supervisors. AR 16. Based on this RFC and the

11  testimony of the VE, the ALJ determined that Plaintiff could not perform her past relevant work,

12  but could perform other work in the national economy. Examples of other work included

13  material recording router and laundry dry cleaning patching machine tender. AR 19-20.

14  **SCOPE OF REVIEW**

15        Congress has provided a limited scope of judicial review of the Commissioner's decision

16  to deny benefits under the Act. In reviewing findings of fact with respect to such determinations,

17  the Court must determine whether the decision of the Commissioner is supported by substantial

18  evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla,"

19  *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v.*

20  *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a

21  reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at

22  401. The record as a whole must be considered, weighing both the evidence that supports and

23  the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993,

24  995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must

25  apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

26  This Court must uphold the Commissioner's determination that the claimant is not disabled if the

27  Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

28

1  substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

2  Cir. 1987).

3                                              **REVIEW**

4         In order to qualify for benefits, a claimant must establish that he is unable to engage in

5  substantial gainful activity due to a medically determinable physical or mental impairment which

6  has lasted or can be expected to last for a continuous period of not less than 12 months.  42

7  U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

8  such severity that he is not only unable to do her previous work, but cannot, considering his age,

9  education, and work experience, engage in any other kind of substantial gainful work which

10  exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).

11  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th

12  Cir. 1990).

13         In an effort to achieve uniformity of decisions, the Commissioner has promulgated

14  regulations which contain, inter alia, a five-step sequential disability evaluation process.  20

15  C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).  Applying this process in this case, the ALJ

16  found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of

17  her disability; (2) has an impairment or a combination of impairments that is considered "severe"

18  (severe impairments of an adjustment disorder with depressed mood, SLE, gouty arthritis, sleep

19  apnea using a C-PAP machine, back pain secondary to status post laminectomy in October 2003,

20  and a history of GERD) based on the requirements in the Regulations (20 CFR §§ 416.920(b));

21  (3) does not have an impairment or combination of impairments which meets or equals one of the

22  impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) cannot perform her past

23  relevant work; but (5) retains the RFC to perform other work in the national economy.  AR 14-

24  20.

25         Plaintiff argues that the ALJ improperly rejected the manipulative limitations imposed by

26  Dr. Bobba.

27

28

**DISCUSSION**

Plaintiff contends that the ALJ wholly ignored Dr. Bobba's opinion as to her manipulative limitations, in contravention of SSR 96-6p.  She believes that if the ALJ adopted Dr. Bobba's manipulative limitations, she would not be able to perform the positions identified by the VE.

RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or equivalent work schedule.  SSR 96-8p.  The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir.2006) (quoting SSR 96-8p).

As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  However, while State Agency physician opinions may not be entitled to controlling weight and do not bind an ALJ, the ALJ "may not ignore these opinions and must explain the weight given to the opinions in their decisions."  SSR 96-6p.  With respect to the RFC finding, SSR 96-6p states:

> Although the administrative law judge and the Appeals Council are responsible for assessing an individuals RFC at their respective levels of administrative review, the administrative law judge or Appeals Council must consider and evaluate any assessment of the individual's RFC by a State agency medical or psychological consultant and by other program physicians or psychologists.  At the administrative law judge and Appeals Council levels, RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s).  Again, they are to be evaluated considering all of the factors set out in the regulations for considering opinion evidence.

*See also* 40 C.F.R. § 416.927(f)(2)(i) ("Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or

1  psychologists as opinion evidence, except for the ultimate determination about whether you are

2  disabled. See §416.912(b)(6).")

3      Here, the record contained two opinions relating to Plaintiff's manipulative limitations.

4  In September 2004, Dr. Bobba opined that Plaintiff could not perform frequent overhead work or

5  frequent twisting, grasping or gripping with either upper extremity due to complaints of pain in

6  her hands and shoulders and swelling in her hands.  AR 300-307.  Dr Bobba based this opinion

7  on the evidence of pain, swelling and limited range of motion in Plaintiff's hands and shoulders.

8  AR 249, 250, 252, 256, 309.

9      The second medical opinion as to Plaintiff's manipulative limitations came from Dr.

10  Morse, the medical expert who testified at the hearing.  Interestingly, it was Plaintiff's attorney,

11  not the ALJ, who elicited the opinion.  In any event, Plaintiff's attorney referenced Dr. Hsu's

12  diagnoses of left third trigger finger, rheumatoid arthritis, and lupus-myalgia, and asked Dr.

13  Morse if Plaintiff would have any trouble picking up small objects.  AR 534.  Dr. Morse

14  responded,

15          Well, I, I, I must admit I have, I have gone through her recent records and I, I don't see
            that as an ongoing issue.  Maybe you could give me an exhibit . . . give me something up
16          to date on that.

17  AR 534-535.

18      Plaintiff's attorney then referenced Dr. Hsu's records, but Dr. Morse did not provide a

19  further opinion as to Plaintiff's manipulative limitations.  AR 535.

20      Defendant concedes that the ALJ failed to discuss Dr. Bobba's manipulative limitations,

21  but urges the Court to find the omission harmless.  For the reasons discussed below, however, the

22  Court cannot do so.

23      First and foremost, the ALJ's lack of specificity in his decision precludes the Court from

24  ascertaining, with certainty, the ALJ's rationale.  See *Ceguerra v. Sec'y Health & Human Serv.,*

25  *933 F.2d 735, 738 (9th Cir. 1991)* ("A reviewing court can evaluate an agency's decision only on

26  the grounds articulated by the agency.").  For example, he devotes very little of his decision to a

27  discussion of medical evidence of Plaintiff's physical impairments, although he finds numerous

28  severe physical impairments.  Other than a reference to "treatment records dated April 2003 to

1    March 2006 show[ing] the claimant's evaluation and treatment for a variety of medical problems,

2    including SLE, GERD, gouty arthritis, sleep apnea using C-pap machine," and a reference to the

3    July 2005, lumbar spine x-ray, the ALJ discusses little, if any, additional medical records.  AR

4    18.

5         Nor does the ALJ clearly explain his treatment of the medical source opinions relating to

6    Plaintiff's physical impairments.  As to Dr. Morse's opinion, which he appears to have adopted,

7    he states:

8         John R. Morse, M.D., who is a board-certified internist, provided impartial expert
          medical testimony at the administrative hearing.  He testified to his thorough review of
9         the medical record which establishes that the claimant has the "severe" impairments of
          systemic lupus erythematosus (SLE), gouty arthritis, sleep apnea using C-PAP machine,
10        back pain secondary to status post laminectomy in October 2003, and a history of
          gastroesophageal reflux disease (GERD).

11   AR 14.

12        In discussing the State Agency physicians' opinions, he explained:

13        For the instant claim, the State agency consultants determined that the claimant could
14        perform a light level of work activity with limitations (Exhibit 8F).  Although the
          undersigned finds that the claimant faces "less limitations" physically, the opinions of the
15        State agency consultants are generally consistent with the objective evidence of record for
          the period at issue.

16   AR 15.

17        Indeed, Dr. Bobba's opinion as to Plaintiff's ability to lift, carry, sit and stand is

18   consistent with Dr. Morse's opinion and the ALJ's RFC finding.  However, as Plaintiff suggests,

19   the ALJ "wholly ignores" Dr. Bobba's manipulative limitations.  Although he states that he finds

20   "less limitations physically," he does not explain his findings or his reasoning.  This failure,

21   when combined with the ALJ's obscure discussion of the medical source opinions *and* his

22   complete failure to discuss the objective evidence of swelling, pain and limited range of motion

23   in Plaintiff's hands and shoulder, constitutes legal error.

24        This error cannot be characterized as harmless because the ALJ's failure to fully explain

25   his rationale prevents the Court from determining that the outcome would have been the same

26   despite the error, especially given the ALJ's finding that Plaintiff could perform alternate jobs

27

28

1 | that require frequent manipulative actions.  Dictionary of Occupational Titles 222.587-038,

2 | 361.685-022, attached as Exh. 1 to Opening Brief.

3 |      The Court is also unable to deem the error harmless because the ALJ's purported reliance

4 | on Dr. Morse's opinion was not supported by substantial evidence.  The opinion of a

5 | nonexamining, testifying medical advisor may serve as substantial evidence when it is supported

6 | by other evidence in the record and consistent with it.  *Morgan v. Comm'r of Social Sec. Admin.,*

7 | *169 F.3d 595, 600 (9th Cir. 1999)*.  In his testimony, Dr. Morgan testified that there was no

8 | evidence of an ongoing issue with Plaintiff's manipulative limitations.  Whether there is an

9 | "ongoing issue," though, is not the correct measure of disability.  Pursuant to 42 U.S.C.

10 | § 1382c(a)(3)(A), in order to qualify for benefits, a claimant must establish that he or she is

11 | unable to engage in substantial gainful activity due to a medically-determinable physical or

12 | mental impairment which has lasted, or which can be expected to last, for a continuous period of

13 | not less than twelve months.  At the very least, then, Dr. Morgan should have discussed the

14 | evidence of swelling, pain and limited range of motion in Plaintiff's hands and/or shoulder from

15 | January 2004, through May 2006.  AR 249, 250, 252, 256-258, 327, 328, 330.  Dr. Morgan's

16 | response was also incomplete because he failed to respond to Plaintiff's attorney's identification

17 | of Dr. Hsu's report.  AR 535.

18 |      The Court therefore finds that the ALJ's decision is not free of legal error and is not

19 | supported by substantial evidence.  Section 405(g) of Title 42 of the United States Code

20 | provides: "the court shall have the power to enter, upon the pleadings and transcript of the

21 | record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or

22 | without remanding the cause for a rehearing."  In social security cases, the decision to remand to

23 | the Commissioner for further proceedings or simply to award benefits is within the discretion of

24 | the court.  *McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).*  "If additional proceedings

25 | can remedy defects in the original administrative proceedings, a social security case should be

26 | remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an

27 | award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health &*

28 | *Human Serv., 859 F.2d 1396, 1399 (9th Cir.1988)* ("Generally, we direct the award of benefits in

cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Given deficient nature of the ALJ's opinion, the Court finds that the action should be remanded for further proceedings.  On remand, the ALJ shall discuss Plaintiff's manipulative limitations and specifically explain the weight given to medical source opinions.  The ALJ should also gather additional medical evidence, if necessary, to evaluate Plaintiff's manipulative limitations.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not free of legal error and is not supported by substantial evidence.  The decision is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Carla B. Hughes and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

**Dated:    June 20, 2008**            _____ **/s/ Dennis L. Beck**_____
UNITED STATES MAGISTRATE JUDGE